UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOUNYA ZAYER,

Plaintiff,                                   Civil Case No.

vs.                                          Complaint and Jury Demand


CITY OF NEW YORK, NYPD, OFFICER VINCENT
D'ANDRAIA, individually and in official capacity,
DEPUTY INSPECTOR CRAIG EDELMAN,
individually and in his official capacity, JOHN AND
JANE DOES 1-10, individually and in their official
capacity.

Defendants.


Introduction

Dounya Zayer was peacefully and lawfully exercising her Constitutional Rights to
assemble, free speech, and protest when she was brutally struck by Police Officer Vincent
D'Andraia as he walked side by side with his supervisor, and high-ranking police official,
Deputy Inspector Craig Edelman. The Defendants' conduct was an extension of the City of New
York's custom, policy, and practice of responding to peaceful protests with unlawful use of force
and arrest, thereby seeking to unlawfully stifle protests and the legitimate concerns of citizens.
The City of New York, by and through the NYPD, has engaged in a well-documented scheme to
impose violence upon those who are peacefully exercising their Constitutional Rights. Dounya
Zayer comes before this Court and seeks to hold the Defendants accountable for their conduct
and inhibit the unlawful practices and polices of the City of New York so that New Yorkers can

1

exercise their rights without the fear of being subject to unlawful force and illegal practices, polices, and procedures.

<u>I. Jurisdiction and Venue</u>

1. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) in that the events and omissions giving rise to these causes of action all occurred in Kings County, NY.

4. Plaintiff asserts the following claims pursuant to the United States Constitution, New York Constitution, Section 42 U.S.C.§ 1983, New York State law, as well as common law.

5. Plaintiff has complied with all requirements for asserting her claims, including filing a notice of claim, thirty days having elapsed since presentation of the claim, and compliance with GML Section 50 and the relevant subsections.

<u>II. Parties</u>

6. Plaintiff is a resident of Queens County, New York.

7. Defendant Vincent D'Andraia is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

8. Defendant Craig Edelman is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

9. At all times herein, Defendant City of New York was and is a municipal entity created pursuant to the laws of the State of New York. Defendant City of New York operates and maintains the New York City Police Department ("NYPD"). The NYPD is an agency, arm and extension of the City of New York. Defendant City of New York and NYPD are the employers of the Defendant Officers and liable for their conduct.

10. At all relevant times the Defendant Officers were acting under color of State Law, including acting as police officers for the City of New York. Defendants were acting within the scope of their employment as police officers and agents for the City of New York when they engaged in the conduct described herein.

11. Officers and individuals John and Jane Does 1-10, are named individually and in their official capacity as Officials and/or Police Officers ("Defendant Police Officers" or "Officer(s)") and were at all relevant times acting under the color of state law as Police Officers. These officers engaged in conduct that violated the Plaintiff's rights, but whose identities are not yet known.

12. Defendant Police Officers are being sued in their individual and official capacities, as well as agents and employees of the City of New York.

## II. Facts

13. On or about May 29, 2020, Plaintiff was exercising her Constitutional Rights to protest in a peaceful manner in Kings County, New York.

14. Defendants D'Andraia and Edelman were on duty and in uniform.

15. Defendants D'Andraia and Edelman were acting within the scope of their authority and duty as NYPD officers on behalf of the City of New York, and providing police services at the Protest.

16. Defendant Edelman is a high-ranking supervisor and employee of the NYPD, with a rank above that of Sergeant, Lieutenant and/or Captain.

17. Defendant D'Andraia called Plaintiff a "stupid bitch" and slapped her phone out of her hand, causing it to fall to the ground and break.

18. Defendant D'Andraia continued to act aggressively towards Plaintiff in plain view of Defendant Edelman.

19. Defendant Edelman failed to intervene and inhibit the unlawful conduct of Defendant D'Andraia.

20. Without any justification, Defendant D'Andraia then viciously struck Plaintiff in plain view of his supervisor Defendant Edelman.

21. The unlawful force used by Defendant D'Andraia caused Plaintiff to fly back several feet and strike her head, back and body on the ground.

22. Despite a clear opportunity to do so, Defendant Edelman failed to intervene, inhibit and prevent the unlawful use of force and the unlawful conduct of Defendant D'Andraia.

23. Upon information and belief, Defendant D'Andraia outweighs Plaintiff by more than one hundred pounds.  He used his full force and strength to push the petite Plaintiff.

24. Defendant D'Andraia used extreme, unjustified and unnecessary force upon Plaintiff.

25. The force used by Defendant D'Andraia, and permitted by Defendant Edelman, caused Plaintiff to suffer severe and permanent physical and psychological injuries, including but not limited to, blacking out, a concussion, constant and debilitating pain and suffering.

26. Defendant Edelman, despite having observed the unlawful use of force and having an opportunity to intervene, failed to do so.

27. Moreover, Defendant Edelman failed to render aid to Plaintiff, and instead, walked away.

28. Defendant Edelman also failed to hold Defendant D'Andraia accountable.

29. Defendant Edelman was well versed in Defendant D'Andraia's propensity to use unlawful force and violate the rights of citizens.

30. As such, Defendant Edelman observed the numerous occasions Defendant D'Andraia used unlawful force and violated the rights of citizens.

31. Defendant Edelman was Defendant D'Andraia's supervisor and failed to monitor, supervise and control him.

32. Upon information and belief, Defendant D'Andraia was Defendant Edelman's supervisor on a daily basis.

33. Defendant D'Andraia has been subject to numerous complaints for violation of rights, unlawful and excessive force.

34. Defendant D'Andraia's unlawful conduct has been well documented.[1]

35. At nearly every encounter, Defendant Edelman was present, or was apprised of Defendant D'Andraia's actions as his supervisor.

36. Despite a serious and well documented history of using excessive force and violating the rights of members of the public, Defendants City of New York and Edelman failed to monitor, supervise, and intervene in this unlawful conduct such that they encouraged and tacitly approved the unlawful conduct of Defendant D'Andraia.

37. It was predictable and all but certain that Defendant D'Andraia would violate the right of Plaintiff as he did on or about May 29, 2020.

---

[1] See https://www.thecity.nyc/2020/6/19/21297453/nypd-cops-in-protester-shoving-ccrb-complaints-brooklyn

38. Indeed, upon information and belief, Defendant D'Andraia has a significant history of Internal Affairs and CCRB complaints that placed Defendants on notice of his dangerous conduct.

39. Despite having notice of Defendant D'Andraia's conduct, Defendants failed to take any steps to address this unlawful conduct and prohibit him from continuing to violate the rights of others.

40. Defendant D'Andraia should not have been permitted to police protests or be a police officer given his known propensity to violate the rights of citizens.

41. Defendants' failure to supervise, monitor, and correct the behavior of Defendant D'Andraia is no surprise as Defendant Edelman, a high-ranking police official, also has a serious and significant CCRB complaint history.

42. Defendant Edelman was subject to several complaints regarding his unlawful actions towards members of the public.

43. Defendant Edelman should have not been permitted to be a supervisor, supervise Defendant D'Andraia, or manage a protest situation given his documented history of violating the rights of civilians.

44. Additionally, the City of New York has exhibited a policy, customs, and procedures that are aimed at inhibiting lawful protests.

45. As a result of the policy, custom and practice aimed at inhibiting lawful protests, New York Attorney General Letitia James held a 2 day hearing on New York City Police Department's Response to Demonstrations wherein she found police officers "using excessive force against protesters, including use of batons and indiscriminate use of

pepper, brandishing firearms at protesters, and pushing vehicles or bikes into protesters.".[2]

46. Indeed, the NYPD has responded to protests by using unlawful force and arrest as a matter of policy.

47. There have been numerous documented incidents in the last seven (7) months where, as here, the NYPD responded to peaceful protests by using excessive/unlawful force and arresting peaceful protesters.[3]

48. Plaintiff was peacefully protesting when she had her rights violated by the Defendants.

49. In violating Plaintiff's rights, the Defendant officers were employing the policy, custom, and procedure of the City that condoned and encouraged unlawful force and arrest as a way to respond to protesters exercising their Constitutional Rights.

50. Plaintiff suffered severe injuries, pain and suffering as a result of the Defendants' actions, inactions and violations of the law.

51. Defendants' conduct had the desired effect of chilling and inhibiting Plaintiff's exercise of her right to protest.

52. Plaintiff is terrified of police and is scared to protest and exercise her rights to protest, free speech and to assemble.

53. Plaintiff suffered fear and apprehension as a result of the Defendants' conduct and caused her great alarm and fear for her personal safety and fear of injury and death.

54. Plaintiff's injuries include severe permanent emotional, physical and psychological trauma and injury.

---

[2] https://ag.ny.gov/sites/default/files/2020-nypd-report.pdf

[3] See https://legalaidnyc.org/news/lawsuit-mayor-nypd-police-brutality-during-protests/ and
https://www.hrw.org/news/2020/09/30/us-new-york-police-planned-assault-bronx-protesters

<u>Count I-Excessive Force/Unlawful Use of Force</u>

55. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

56. Upon information and belief, each Defendant, intentionally and/or recklessly used and attempted to use unreasonable, unlawful and/or excessive force on Plaintiff, including but not limited to, striking Plaintiff, thereby depriving Plaintiff of her right to be free from assault, battery, the use of unreasonable, unlawful, excessive, and improper force, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, NYS Constitution, New York State laws, and the common laws of New York.

57. Defendants' actions were without any legal justification, and the force used upon Plaintiff was excessive, unwarranted, inappropriate, reckless, negligent and wholly improper.

58. Defendants' use of force against Plaintiff was not justified as she posed no threat to the Defendants that required the use of force used against her.

59. Defendants' actions caused Plaintiff to fear for her life and safety, and at no point was any of the contact and attempted contact consensual or privileged.

60. As a direct and proximate result of each Defendants' acts and/or omissions, Plaintiff suffered and continues to suffer significant severe physical and emotional injuries, including possibly requiring surgery, disfigurement, permanent disability and inability to walk and ongoing treatment.

61. As a direct and proximate result of the above unlawful conduct, Plaintiff was caused to suffer personal injuries, violation of her rights under Federal, State, and common law, rights to be free from unlawful use of force, assault, and battery, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

62. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

<u>Count II-Assault and Battery</u>

63. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

64. Defendants approached Plaintiff and struck her, causing her to suffer substantial injuries.

65. Defendants approached Plaintiff in an aggressive and hostile manner, causing her to fear for her safety and be apprehensive of the bodily harm inflicted upon her by the Defendants.

66. Defendants also used unlawful force upon Plaintiff, including striking her with such force that she suffered serious and likely permanent physical and psychological injuries.

67. Indeed, plaintiff struck her head and back, suffered a severe concussion, endures constant pain and suffering, and continues to suffer the physical and psychological effects of Defendants' conduct.

68. As a result of Defendants' unlawful conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

<u>III-Violation of Right to Free Speech, Assembly, and Protest, and Retaliation</u>

69. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

70. Defendants D'Andraia and Defendant Edelman were in uniform and acting under color of law when they engaged in the aforementioned conduct.

71. The Defendants visited brutal violence upon Plaintiff simply because she was exercising her rights under the United States and New York Constitutions to free speech, assembly, and protest.

72. The Defendants did not like the fact that Plaintiff was protesting police violence and brutality, and therefore sought to inhibit her speech, assembly, and right to protest by using excessive, unwarranted and unlawful force upon her.

73. As police officers, Defendants had the aim of inhibiting the exercising of Plaintiff's rights, discouraging same, and inflicting physical harm upon her so that she would not continue to protest, assemble and use her speech to object to police brutality.

74. Defendants retaliated against Plaintiff for her assembling, protesting, and speaking out against police brutality, as are her Constitutional Rights.

75. Defendants succeeded in their violation of Plaintiff's rights to speech, assemble, and protest when they caused her significant injuries that inhibited her ability to exercise these rights.

76. As a result of Defendants' unlawful conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

IV. _Monell_ Liability/Respondeat Superior/Failure to Supervise/Failure to Monitor/Negligent Hiring/Retention/Training/Municipal Liability/Failure to  Protect

77. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

78. The City of New York, via the NYPD, has effectively ratified the misconduct of the Defendant-Officers. The violation of Plaintiff's Federal, State, and common law rights and resulting injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to the City of New York.

79. Said conduct included, but is not limited to, the acts of the Defendant agents and officers in the performance of their duties, which amounted to deliberate indifference to the rights of persons, including Plaintiff, who was subject to excessive force, unlawful force and arrest, negligence, and other misconduct by the Defendant officers, who the NYPD knew

had demonstrated a history of misconduct involving similar violations of common law, State, and Federal rights and causes of action.

80. The City of New York and the NYPD also failed to use reasonable care and/or was negligent in the hiring and retention of its employees, officers, and/or servants, failed to and/or was negligent in the retention, monitoring, and/or supervision of the individual Defendants, and failed to provide the appropriate safeguards to prevent the negligent use of force, assault, battery, and use of excessive force in violation of Plaintiff's rights as complained of herein.

81. It is clear that there is a need for monitoring and supervision regarding the use of force, assault, battery, and negligence, and that there is deliberate indifference to the use of same, particularly for the Defendant-Officers, who had histories of similar misconduct prior to their interaction with Plaintiff of misuse of force, excessive force, assault and battery that required interdiction, investigation, supervision, and monitoring.

82. The City of New York and the NYPD failed to train officers that even if Plaintiff was a suspect in some crime, they nonetheless cannot commit an assault or battery, and cannot employ unreasonable, unlawful, and excessive force upon that individual, particularly significant use force such as striking Plaintiff in a vicious and heavy-handed manner.

83. Additionally, the City failed to train its officer on how to deal with protesters exercising their constitutional rights, and to not use force upon them or unlawfully discourage same.

84. This omission is glaring in light of the protests that regularly occur in New York City and the City's duty to protesters and those exercising their constitutional rights.

85. The City of New York also failed to train its officers that if they see other officers engaged in misconduct/unlawful activity, such as the unlawful use of force and inhibiting

the exercise of free speech, protest, and assembly in this matter, they must intervene to prevent it.

86. As in the case of Defendant-Officers' past unlawful use of force and employment of unlawful and excessive force, there was no need to use any force, let alone significant force, even if Plaintiff was suspected of committing a crime.

87. City of New York and the NYPD, including its Police Chief and superior officers such as Defendant Edelman, thus created a tacit policy and custom of permitting the Defendant-Officers' unlawful actions to continue with their imprimatur and approval.

88. Indeed, upon information and belief, the Defendant-Officers involved have had numerous lawsuits filed against them for use of unlawful and excessive force.

89. Upon information and belief, the Defendant-Officers also had several CCRB/IA complaints lodged against them for false arrest, unlawful, unnecessary, and excessive force, before they used the unlawful force and employed a false arrest against the Plaintiff.

90. Despite the lawsuits and complaints for excessive force and unlawful arrest prior to the complaint at hand, the Defendant-Officers were not re-trained, provided additional supervision, or additional monitoring of their performance so as to prevent the unlawful use of force upon Plaintiff.

91. Had the Defendant-Officers been retrained, monitored, and supervised given their histories, the unlawful use of force and actions against Plaintiff could have been prevented as the Defendant-Officers knew that they would be held accountable and would not engage in the conduct complained of herein.

92. The failure of the City of New York and the NYPD to monitor, supervise, and retrain the Defendant officers was glaring in light of their histories of complaints and lawsuits for excessive, unlawful, and unnecessary use of force and other misconduct. The Defendant officers should not have been on the streets.

93. Upon information and belief, the City of New York and the NYPD also failed to track and meaningfully monitor and investigate the uses of force by the Defendant-Officers such that the City of New York and the NYPD failed to monitor, supervise and control the Defendants. These acts and omission demonstrated callous disregard with respect to the propensity of the Defendant-Officers, and all but guaranteed that they would eventually use excessive and unlawful force against the Plaintiff.

94. The City of New York and the NYPD were aware, or should have been aware, with any level of diligence, of the shockingly high number of incidents involving unlawful use of force, misconduct, and excessive force by its officers, and in particular the Defendant-Officers named herein, but took no action to rectify the obviously deficient IA process, monitoring, and supervision.

95. The acts and omissions of the City of New York and NYPD effectively condoned Defendant-Officers' past conduct of engaging in unlawful and excessive force, and the Defendant-Officers knew that they would not be held accountable in any meaningful way if they used unlawful and excessive force, such as in the case of Plaintiff.

96. Upon information and belief, the City of New York and the NYPD do not meaningfully investigate CCRB and Internal Affairs Complaints. The City of New York and the NYPD purport to investigate complaints, but in reality, conduct sham investigations that are aimed at covering up police misconduct.

97. Rather than properly adjudicate Internal Affairs/CCRB investigations, and meaningfully investigate complaints, the City of New York and the NYPD skew the investigations in favor of officers so that the complaint is either not-sustained due to alleged equipoise in evidence, or incapable of being adjudicated against the officer. Moreover, in many cases, including ones involving the Defendant-Officers, a review of a complaint is cursory at best, and usually quickly closed without any meaningful investigation.

98. Upon information and belief, the deficient Internal Affairs investigations, including those involving the Defendant-Officer's previous conduct, also include not retaining evidence relevant to Internal Affairs investigations, (e.g. such as video), failing to speak with relevant witnesses, failing to interview complainants, misinterpreting data, ignoring evidence, giving officers an opportunity to change their stories so as to escape liability, misclassifying IA complaints so that they are not investigated, crediting an officer's version of events simply because it is an officer, discounting eyewitness testimony in favor of officers, and simply not investigating all complaints.  Upon information and belief, this defective way of conducting IA investigations was how investigations into the unlawful use of force by the Defendant-Officers were handled.

99. Defendant City of New York and the NYPD maintained a policy whereby, upon information and belief, they failed to meaningfully investigate IA and CCRB complaints, if they investigated them at all, thereby creating a policy and custom whereby officers felt that they could violate the rights of citizens with impunity and they would not be held accountable, particularly in the case of the Defendant-Officers.

100.      Indeed, Defendants each have histories of being sued for violations of civil rights.

101.     However, no Defendant was disciplined and monitored, and no steps were taken to ensure that they did not continue to employ excessive force, as they ultimately did against the Plaintiff.

102.     Defendants used unlawful and significant force upon Plaintiff constituting improper, unlawful, and excessive use of force.

103.     Upon information and belief, Defendants have numerous complaints lodged against them prior to the incident with Plaintiff. The City Of New York and NYPD had ample notice of the Defendant-Officers' histories, propensities, and misconduct, similar to the unlawful conduct they subjected Plaintiff to. Those incidents do not appear to have been meaningfully investigated, and despite the obvious need for intervention, the NYPD failed to take any corrective action related to these officers, such as increased supervision, training, taking them off the street, and reassigning them to non-enforcement duties, or not deploying them for protest duties.

104.     Upon information and belief, Defendant officers have been sued numerous times for the unlawful use of force for incidents prior to the unlawful use of force against Plaintiff. Yet Defendant City of New York and NYPD failed to investigate these unlawful uses of force and failed to take any meaningful steps to ensure that the unlawful use of force would not continue, such that the Defendant City of New York was indifferent to the right of Plaintiff to be free from excessive force, and all but guaranteeing that those citizens who encountered these individuals would be subject to excessive force.

105.     The City of New York and the NYPD are liable for the conduct of the Defendant Officers pursuant to respondeat superior as Defendant-Officers were acting within the

scope of their employment, in furtherance of their job duties and on behalf of the City of New York when they engaged Plaintiff and committed the acts complained of herein.

106.     The City of New York and the NYPD, including the Chief of Police, knew, or with any diligent inquiry should have known, and had actual and/or constructive notice that Defendants were prone to the use of unlawful and excessive force, as well as commit assault and battery, but failed to do anything to train, monitor, supervise, or properly investigate these officers so as to prevent the predictable use of excessive force upon Plaintiff as a continuation of their pattern of unlawful use of force.

107.     The failure of the City of New York and the NYPD to meaningfully respond to and investigate these complaints is tantamount to a policy of encouragement and tolerance for excessive and unlawful force.

108.     The violation of Plaintiff's rights as described herein are also an expected and natural consequence of City of New York/NYPD's failure to discipline, monitor and supervise its officers.

109.     Given the lengthy lawsuit, apparent Internal Affairs and CCRB histories of the Defendant officers, the City of New York, NYPD, its Chief of Police and policy makers knew that Defendant-Officers needed discipline, training, supervision and monitoring, but failed to provide same.

110.     In light of the foregoing, had the City of New York and NYPD and its policy makers provided additional monitoring, training and supervision for the Defendant officers, the individual Defendant officers would not have had occasion to violate Plaintiff's rights and commit the acts complained of herein, and but for the Defendant City's deliberate indifference to the obvious risk posed by individual Defendant officers,

Plaintiffs rights would not have been violated. This includes not only providing additional training, but also removing these officers from contact with the public and/or ensuring that a supervisor was consulted before the use of any force or arrest.

111.     In addition, the City of New York and the NYPD and the Defendant-Officers acted under color of law pursuant to an official policy or custom and practice of the NYPD whereby the use of unlawful and excessive force was permitted, tolerated, and condoned, and intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control, monitor, and discipline on a continuing basis their employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully using excessive force upon Plaintiff and violating her rights to protest and free speech.

112.     The City of New York and NYPD failed to protect Plaintiff and provide a safe opportunity for her to exercise her rights.

113.     Defendant City of New York also enacted policies, customs and procedures, directly and by tacitly approving the unlawful use of force by not stopping it, with the aim to unlawfully inhibit it. Moreover, the City of New York has employed, and tacitly approved, unlawful violence as a response to protesters exercising their rights to freedom of speech, assembly, and protest.

114.     As a direct and proximate result of the above-described impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, as well as State and common law rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

115.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

Count V-Failure to Intervene

116.     Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

117.     Each of the Defendant-Officers engaged in the use of excessive force and assault of the Plaintiff.

118.     While each Defendant-Officer was engaged in the use of excessive force and the violation of Plaintiff's rights as alleged herein, those who were not using force against Plaintiff failed to intervene to prevent the use of excessive force in violation of Plaintiff's rights, despite an opportunity to do so.

119.     The Defendant-Officers watched as Plaintiff was unlawfully subjected to excessive, unnecessary, and unlawful force.

120.     Each Defendant had an opportunity to intervene as the use of excessive, unnecessary and unlawful force was being deployed against Plaintiff in front of them and within their immediate area. Each Defendant failed to instruct other officers not to use force or physically restrain the officers from using force.

121.     Rather than intervene to stop the use of excessive force and the violation of Plaintiff's rights as alleged in this Complaint and as the law requires, the Defendant officers did nothing and, upon information and belief, then attempted to conceal the use of excessive force by making false statements about what occurred in seeking to justify the unlawful use of force.

122.     As a direct and proximate result of the above conduct, Plaintiff suffered personal injuries, violation of her common law, State law and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

123.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### Count VI. Unlawful Arrest, False Arrest, Unlawful Search and Seizure

124.     Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

125.     Defendant-Officers engaged in an unlawful arrest and seizure of Plaintiff.

126.     Each Defendant-Officer detained and arrested Plaintiff without probable cause to do so.

127.     Each Defendant seized Plaintiff without any probable cause or legal justification to do so.

128.     No Defendant obtained a warrant for Plaintiff's arrest, and nor did they have any legal justification to stop, seize, detain, arrest, or prosecute Plaintiff.

129.     Plaintiff did not consent to the unlawful arrest and seizure.

130.     As a direct and proximate result of the above impermissible conduct, Plaintiff suffered personal injuries, violation of her common law, State law, and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

131.     As a result of Defendants' unlawful conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

<u>Count VII. Negligence/Negligent Infliction of Emotional Distress/Intentional Infliction of Emotional Distress</u>

132.     Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

133.     Defendants were negligent in their interaction with the Plaintiff, including but not limited to, using force inappropriately, accidently and recklessly.

134.     Defendants approached Plaintiff aggressively, threatened her, then struck her phone out of her hand, then viciously pushed her causing her to fly several feet away and strike her head, back, and body on the ground with such force that she suffered severe emotional and physical injuries.

135.     Defendants were negligent in how they treated Plaintiff, without any justification for doing so.

136.     Defendants should not have struck Plaintiff's phone out of her hand, cursed at her, pushed her to the ground, and taken other acts that inhibited the exercise of her rights and violated her rights.

137.     Defendants deviated from the acceptable standards in using force including approaching Plaintiff aggressively, slapping her phone out of her hand, cursing at her, and striking her with brutal force, all without any legal justification for doing so and without any threat to themselves or others from Plaintiff.

138.     Additionally, Defendants deviated from acceptable standards in using force in the way that they did, including but not limited to, striking Plaintiff.

139.     To the extent that Defendants subjected Plaintiff to unintentional or unnecessary use of force, Defendants acts were per se negligent and grossly negligent.

140.     The Defendants' actions were not within prevalent guidelines for the use of force.

141.    Moreover, in these circumstances, where Plaintiff was not pointing a weapon at the Defendants or posing a threat to them, a reasonable officer would not have used any force upon Plaintiff.

142.    Defendants' actions were the proximate cause of Plaintiff's significant injuries.

143.    Defendants' actions caused Plaintiff severe permanent physical injuries and significant emotional distress.

144.    As a direct and proximate result of the above conduct, Plaintiff suffered personal injuries, violation of her rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

145.    As a result of Defendants' conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages against the individual Defendant-Officers where permissible by law;

(c) interest, both pre-judgment and post-judgment;

(d) a declaration that Defendant's violated the rights of Plaintiff;

(e) an Injunction/Order prohibiting the Defendants from violating the rights of protesters, and amending their policies to inhibit the violation of rights as alleged herein;

(f) attorney's fees and costs; and

(g) all other such relief as this Court may deem appropriate, equitable, and just

JURY DEMAND

Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: December 14, 2020

Respectfully submitted,
The Aboushi Law Firm PLLC
s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.
Tahanie A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508
Aymen@Aboushi.com
Tahanie@Aboushi.com
*Attorneys for Plaintiff*